Ashburn, J.
Plaintiffs filed their original petition in the Common Pleas Court, July 18, 1868. Part of the defendants are officers of Fayette county, including the county commissioners; the other defendants are persons charged ■with' duties in relation to the road improvement, and citizens who were petitioners for the improvement; the petition represents that the county commissioners, without legal •authority, on the 22d of June, 1868, made a final order to improve a road therein named ; the petition alleges certain •facts, which petitioners claim, clearly make a want of lawful power in the county commissioners to make the final •order for the improvement, and especially in this that a majority of resident land-holders, whose lands would be •benefited and ought to be assessed to pay for the same, had •not petitioned for the improvement; that fifty-eight of the resident land-holders who had signed the petition, had, before the final order was made, “ revoked and cancelled the signing of the same by them; ” part of the defendants •filed their answers October 24,1868, and others March 11, 1868, denying all the material allegations of fact in the petition, and affirming that a majority of resident landholders had petitioned for the improvement, and denying that any of the petitioners had withdrawn from the petition by remonstrance. On the 13th of January, 1869, on leave of the court, plaintiffs filed a supplemental petition, •alleging amongst other things, that the county commission•ers, after they had been duly notified of the pending and *227 prayer of the petition, had, through an engineer, made a contract with Grove & Coffman, to construct the improvement at a cost of $8,889 per mile, to be paid in Fayette county bonds; that Grove & Coffman, at the time they entered into the contract, had knowledge of the pendency and object of the action; that the engineer had made estimates for the work done, under the alleged contract, in favor of the contractors; that county bonds had been issued to them, and to provide for their payment a special tax duplicate had been made and placed in the hands of the county treasurer for collection; that the lands of plaintiffs had been placed upon the special duplicate, taxes assessed upon each of them, and that the treasurer was proceeding to collect said assessments from the plaintiffs; petitioners prayed for an injunction, and, upon it, a temporary injunction was allowed, afterward dissolved, and a final decree made in favor of the defendants. The case was appealed to the District Court, and by that court reserved to the Supreme Court. After the action was in the Supreme Court, that court sent it to a master to report upon certain disputed facts, to wit:
“I. The names and number of resident land-holders, whose lands were reported by the viewers and surveyor as liable to be assessed for the costs of the improvement, as appears from the pleadings and evidence in the case.”
“II. Names and number of such land-holders who signed a petition for the improvement referred to; discrim- • inating between those who signed before, and those who signed after the view and survey.”
“III. The names and number of such petitioners who,after signing the petition, signed any remonstrance against the making of said improvement, and which remonstrance was presented to the commissioners before they made the final order for the improvement.”
In obedience to this order the master made report, filed October 20, 1875, to which neither party has taken exception. He reports the number of resident land-owners whose lands were reported by the viewers and surveyor as *228 liable to be assessed for costs of improvement, to be 247 ; the number who signed the petition for improvement before view and survey, to be 42; the number who signed after, to be 90; total number who signed petition, 132. Of the number who signed the remonstrance, 13 signed the petition prior to the view and survey, and the number who signed the remonstrance after the view and survey was 44, making the number who signed the remonstrance to be 57.
It appears then by this report, counting the remonstrants as petitioners'for the improvement at the time the final order was made, that more than a majority of persons who had a right to petition were petitioners for the improvement, but counting them off, only a minority remained at the time the final order was made.
Out of the record in this action arises three questions for our consideration :
I. At what time, in proceedings of this kind, arising under the two-mile-road improvement statutes, had by the county commissioners, must there be found by them, officially, an assenting majority of lawful petitioners, in order that they may have final and complete jurisdiction over the subject-matter of the improvement?
II. May persons qualified to be petitioners for such road improvement, and who have subscribed a petition praying for the improvement, afterward and before final order made; by remonstrance or otherwise, withdraw their assent to the making thereof, so that it. would be illegal for the commissioners to count them as petitioners asking for the final order to be made ?
III. Where the jurisdiction of the county commissioners over the subject-matter before them is the question involved, are proceedings in equity, questioning and denying their jurisdiction, and seeking to restrain unlawful action on their part, the proper mode of seeking redress ?
The proceedings involved in this action were commenced before the county commissioners of Eayette county, under an act to amend the act of March 29,1867, authorizing *229 county commissioners to construct roads on a petition of a majority of the resident land-owners along and adjacent to the line of the road, passed March 31,1868. (S. & S. 673).
Under this act, the first step toward giving jurisdiction to the county commissioners is the presentation of a petition to them “by five or more of the land-holders whose lands will be assessed for the expense of the same,” and the giving of a bond by one or more responsible freeholders to secure the payment of the expenses of the preliminary survey and report of the viewers, in case the improvement shall not be finally ordered.
The act of March 29 was further amended May 9, 1868 (S. & S. 675, 676), and before the final order was made in this case. Section 5 provides: “ Upon the return of the report mentioned in the last section (section 2 of the act of March 29, 1868), the commissioners shall, if in their opinion public utility requires it, enter upon their records an order that the improvement be made; . . . but such order shall not he made until a majority of the resident land-holders of the county, whose lands are reported as benefited and ought to be assessed, shall have subscribed the petition mentioned in the second section of this act.”
Section 2 of the act of May 9, 1868, in which the portion of section 5 above recited is found, repeals the fifth section of the act of March 31, 1868, with this saving clause: “ That the repeal of said section 5 shall not affect any right or liability accruing or accrued, ... or proceeding, had or commenced under the provisions thereof.”
No question can arise but that five qualified petitioners, with the requisite bond, gives the commissioners jurisdiction (preliminary to full and final jurisdiction) to appoint the viewers and a surveyor, and receive their report. If the preliminary petition was subscribed in the beginning by a majority of the resident land-holders within the prescribed boundaries, and no event happens to disturb their original relation to the petition1, or to disqualify them as legal petitioners, up to the time the commissioners make the final order, they are in possession of the jurisdictional *230 facts that confer upon them, under the statute, the power to make the final order for the improvement. If, however, the first petition does not contain the requisite majority, others must unite with them, so that, at the time the commissioners assume to make the final order, there will be “ a majority of resident land-holders of the county, whose lands are reported as benefited and ought to be assessed, asking for the improvement.”
The statute does not confer jurisdiction upon the commissioners. It designates them as the body upon which jurisdiction may be conferred; describes the persons and the number who can confer it; the manner in which they may bestow it; and the time at which the jurisdictional facts are to be ascertained by the commissioners. If this fact is correctly determined in the affirmative, and they order the road to be constructed, all things necessary toward the completion of the work may be done by the proper public agents to levy and collect, from the minority as well as from the majority, the neeessary amount of money to pay for the improvement.
We are not without authority on questions twin to this in Ohio. In Corry v. Gaynor, 22 Ohio St. 584, in which the trustees of a special road district sought to make assessments to defray the expense of improving a street, the court held : “ The trustees of special road districts have no power, under section 46 of the act of May 3,1852, as amended by the act of May 12,1853 (51 Ohio L. 376), to order the improvement of streets, and charge the costs thereof upon the abutting lots, except upon a petition of two-thirds of the resident owners of the lots thus situated; and the finding of the trustees that such petition was presented is not conclusive of the fact.” ' Stone, J., in the opinion on' page 593, says : “ The trustees were authorized to order the improvement in question, and to charge the cost thereof upon the abutting lots; but they were authorized to do this only upon the petition of two-thirds of the resident lot-owners. 2 S. & 0. 1509, sec. 46. Such petition was therefore a necessary prerequisite to the lawful exercise of the power.” *231 As asserting the same principle, see 20 Ohio St. 349, and Roberts v. Easton et al., 19 Ohio St. 78.
The second question in this case is the right and effect of remonstrance by any portion of the petitioners upon their relation to the prayer of the petition for the improvement.
The right to remonstrate is not questioned, but the effect of remonstrance, as viewed by defendants, is certainly ingenious. If a petitioner for the improvement can have his name erased from the petition, as to him it has no vitality. If he signs the petition, and he afterward subscribes a remonstrance against the affirmative action of the commissioners upon the petition, it is claimed he is still petitioning for the improvement in the attitude of one trying to convince the commissioners that it would not be advisable to grant their prayer as petitioners, but rather to grant their prayer as remonstrants. This view of the case is not sound. They are for the improvement as prayed for, or against it, and can not be allowed to occupy any middle ground. The statute can not mean that, if there is a majority of qualified poersons at some time between the commencement of the proceedings and the time the final order is to be made, whether there be such .majority at that time or not, the improvement may be ordered. As' held on the first proposition, this jurisdictional majority must be found in the attitude of asking for the improvement at the time the proposed final order is to be made ; and one who has subscribed the petition may, at any time before the board makes the final order, by remonstrance or other unmistakable sign, signify his change of purpose. His assent is Avithin his own control up to the time the commissioners move to make the final order. He could not, after having signed the petition for the improvement, be silent until after the order had been made for the improvement, and then put in a remonstrance that would avail him anything. The form or manner in which his' dissent is made known is immaterial. If it is clearly made known to the board of commissioners, that is sufficient. Story on *232 Agency, treating upon the subject of revoking an agency, section 474, says : “ It may be express as by a direct and formal declaration publicly made known, or by an informal writing, or by parol, or it may be implied from circumstances.”
The third question is in relation to the remedy.
If a party has not lain by until he is estopped in.his right to pursue the remedy, he may, by express statutory, pro vision, enjoin the collection of an illegal assessment against his property. Independently of any statutory provision, the question of jurisdiction in tribunals of special and limited power may be investigated in the way here pursued. The necessity of the remedy in this form arises out of the subject-matter of the action and the condition of the law in relation thereto. If the commissioners make an unauthorized order, there is no appeal from their finding. A petition in error would seldom, if ever, reach the question, there being no provision whereby bills of exception can be had upon their rulings. The question of jurisdiction in cases of this kind is one almost exclusively of fact, and when they determine the question of fact erroneously there is no way by a bill of exceptions or other proceeding to take the testimony before a reviewing court.
In the language of the judge in Roberts v. Easton et al.: “For, without such right of interposition, the statutory provision for their protection would be nugatory.” Again: “A citizen of a county may maintain an action in his own name, in behalf of himself and other citizens, whether a tax-payer or not, to restrain the county commissioners from the performance of acts which are fraudulent, in breach of trust, or in excess of their power.” 1 His. 196.
“ If the persons interested can not sue, there appears no, other remedy than the one taken in this case. It appears to be a matter of necessity.” Id. 201.
The chancellor, in Belknap v. Belknap, 2 Johns. Ch. 463, in principle on the question of the remedy, very like the one under consideration, maintained the right of equitable interference, and cited, with approval, the following cases, *233 which fully sustain the remedy by injunction: Hush v. The Trustees of Mordan College, 1 Ves. 188; Shad v. The Aberdeen Canal Co., 2 Dow. 519; Ager v. The Regent's Canal Co., Cooper’s Eq. 77.
In Anderson and wife v. Comm'rs of Hamilton Co., 12 Ohio St. 642, the judge says : “ Where a party is in possession of real estate, which those professing to act under public authority are about to enter upon and appropriate for the purpose of a public road, ... he may properly ask the interposition of a court by injunction.”
Upon principles broad as equitable right, where it is shown that public officers of special and limited jurisdiction are about to inaugurate a foundation for other proceedings that, if carried out, will result in tax-assessments upon plaintiff’s land, and it is clear that such officers have no authority in law and fact for doing what they have done and what they propose to do, plaintiffs may properly ask a superior court to restrain them from proceeding further, until an inquiry can be had as to what has been done and what is proposed to be done.
The injunction in favor of the plaintiffs is made perpetual, plaintiffs to recover their costs herein expended.
Scott, Chief Judge, Day, Wright, and Johnson, JJ., concurred.